UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAREN BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:07-cv-1118-DFH-DML |
| ) | |
| SARA LEE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Karen Brown applied for a sales position with defendant Sara Lee Corporation in December 2006, when she was pregnant. After an interview by a recruiter and the individual who would be her supervisor, she received an offer. Sara Lee later rescinded that offer. Sara Lee says that it rescinded its offer after discovering the fact, uncovered as part of a routine background check, that Brown was terminated by a prior employer as part of its investigation into a suspected ethics violation and that she was ineligible for rehire by that former employer. Brown contends that her offer was rescinded because Sara Lee found out that she was pregnant and that its decision was illegal gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964. Sara Lee has moved for summary judgment on Brown's discrimination claim. For reasons explained below, its motion is granted.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party must show that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not positively disprove the opponent's case; rather, it may prevail by establishing the lack of evidentiary support for that case. See *id.* at 325. Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2); see also *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). Bare allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004), quoting *Hildebrandt v. Illinois Dep't. of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See *id.* In deciding a motion for summary judgment, a court may not assess the

credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; the court must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

*Facts for Summary Judgment*

In accord with the standard for summary judgment, the facts stated below are not necessarily true in an absolute sense, but they are either undisputed or reflect the admissible evidence in the light reasonably most favorable to Brown, the non-moving party. Facts adverse to Brown that Sara Lee has established beyond reasonable dispute are necessarily included.

In December 2006, plaintiff Karen Brown sought a sales job with defendant Sara Lee as a Solution Sales Representative. Brown Dep. 32-34; Gluck Aff. ¶ 3. Sarah Lee recruiter, Mindy Gluck, interviewed Brown by telephone, and then Brown was scheduled for an interview with Gary Schreiber, who would have supervised Brown if she had been hired to the Solution Sales Representative position.[1] Gluck Aff. ¶ 2; Schreiber Aff. ¶ 2; Brown Dep. 34-35. In advance of her December 13, 2006 interview with Schreiber, Brown submitted a signed job application that included an authorization to submit to Sara Lee's background screening process. Brown Dep. 39-41, 55-56; Brown Dep. Ex. B. On her

---

[1] Mindy Gluck was not an employee of Sara Lee. She was an independent contractor who worked as a recruiter on behalf of Sara Lee. Gluck Aff. ¶ 2.

application, Brown stated that she had left PepsiCo, a prior employer, due to a "reorganization." Brown Dep. 39-40, 63-64. Schreiber interviewed Brown in person on December 13, 2006. Schreiber Aff. ¶ 3; Brown Dep. 37.

In a later conversation with Gluck, and without being prompted to do so, Brown voluntarily told Gluck that she was pregnant. Brown Dep. 55-58. Gluck advised Brown that her pregnancy would have no bearing on her application process. *Id.* Brown's interviews with Gluck and Schreiber were her only interviews with Sara Lee. Neither asked her if she was pregnant. Brown Dep. 34-35, 38, 42-43. Brown never heard Gluck say anything suggesting that either she or Sara Lee had any anti-pregnancy animus or bias. Brown Dep. 57-58, 115, 117-18.

On December 22, 2006, a third party background check provider (Verifications, Inc.) provided the results of Brown's background check to Gluck.[2] Gluck Aff. ¶ 5. For reasons not explained in the record, Gluck did not pass along the background check report to Sara Lee until January 2007. Gluck Aff. ¶ 5. In the meantime, Gluck extended a contingent offer on behalf of Sara Lee to Brown by telephone, and Sara Lee formalized that offer in a letter that followed. Gluck

---

[2]Brown asserts that Sara Lee, as opposed to Gluck, received the results of her background check on December 22, 2006. Pl. Br. 4. To support this assertion, Brown relies on her own unsupported deposition testimony. *Id.*, citing Brown Dep. 94, 96. Her statement has no apparent basis in personal knowledge. She testified, in fact, that she had "no way of knowing who received it." Her testimony on this point is not competent evidence and is insufficient to raise a factual dispute at summary judgment. See *Witte v. Wisconsin Dep't of Corrections*, 434 F.3d 1031, 1036-37 (7th Cir. 2006) (affirming summary judgment for employer where plaintiff relied on testimony given without personal knowledge).

-4-

Aff. ¶ 5; Brown Dep. 47-49; Brown Dep. Ex. C. Sara Lee's offer was contingent on the outcome of Brown's background check. Gluck Aff. ¶¶ 3-4; Brown Dep. Ex. C at 2. Brown accepted Sara Lee's contingent offer on January 9, 2007. Brown Dep. 49-51; Brown Dep. Ex. C.

Brown informed Schreiber that she was pregnant on January 9, 2007, advising him that her proposed start date would coincide with her plans to take maternity leave. Brown Dep. 52-54, 59-61. Brown never heard Schreiber say anything suggesting that he had any anti-pregnancy animus or bias, although when she informed Schreiber that she was pregnant, he "hesitated." Brown Dep. 60-61, 115, 117-18. Brown never told anyone else at Sara Lee (other than Gluck and Schreiber) about her pregnancy. Brown Dep. 52-54, 59, 62.

In the meantime, Sara Lee asked Gluck to follow up with Brown regarding her background check report. Sara Lee was specifically concerned with Brown's former employment with PepsiCo. The report stated that Brown was not eligible for rehire at PepsiCo due to an ethics violation. Brown Dep. 100-01; Brown Dep. Ex. E; Gluck Aff. ¶ 6. In mid-January, Gluck called Brown to inquire about her employment with PepsiCo. Brown Dep. 75-77. Brown did not deny that she had been questioned for a suspected ethics violation, nor that she was not rehirable. Brown explained that she had unknowingly submitted falsified photographs to PepsiCo on behalf of one of her customers. Brown Dep. 78-87, 93. Brown's PepsiCo customer admitted responsibility for the falsified pictures, and Brown's

PepsiCo supervisor stood by her during the investigation process. Brown Dep. 78-80, 88. She named references at PepsiCo – her former supervisors Jim Leonard and Julie Mitten – who could confirm her explanation. Brown Dep. 87-92.[3] Gluck conveyed that information to Sara Lee. Gluck Aff. ¶ 7. Brown also talked to Schreiber about Sara Lee's concerns, who told her not to worry about it. Brown Dep. 111-12. Prior to these conversations, Brown had not discussed the circumstances of her termination from PepsiCo with Gluck or Schreiber. Brown Dep. 38-41, Brown Dep. Ex. B.

Gluck called Brown to inform her Sara Lee was rescinding its offer, and Brown received a letter from Sara Lee dated January 19, 2007, confirming that its offer was being withdrawn due to the results of the background check conducted by Verifications, Inc. Gluck Aff. ¶ 8; Brown Dep. 118-19, 124-26, Brown Dep. Exs. H-I. The letter said that Brown had five days to dispute the information contained in the background check report, a copy of which was enclosed with the letter. Brown Dep. Ex. H. In the meantime, Verifications, Inc. updated its background check. Brown Dep. Ex. F at 5. The revised report confirmed that Brown's Regional Director at PepsiCo confirmed that Brown was "not eligible for rehire due to company policy," but no longer stated that Brown's termination was due to an ethics violation. *Id.*

---

[3] Brown testified in her deposition that her former bosses e-mailed her and told her that they gave her "rave reviews" when discussing her employment at PepsiCo with Gluck. Pl. Br. 11, citing Brown Dep. 91. Brown's testimony is inadmissible hearsay on these points and may not be considered at summary judgment.

-6-

On January 26, 2007, Gluck advised Brown that Sara Lee's "upper management" had decided to officially rescind her employment offer. Brown Dep. 89-90; Brown Dep. Ex. K. The decision to withdraw Brown's offer was made on behalf of Sara Lee by Human Resources Director Toni Lang and Vice President of Sales and Operations Manager Heidi Modaro. Lang Aff. ¶ 5; Modaro Aff. ¶ 5. Brown believed that Gluck and Schreiber were also involved in the decision-making process.[4] Gluck and Schreiber testified that they never informed anyone at Sara Lee that Brown was pregnant, Gluck Aff. ¶ 10; Schreiber Aff. ¶ 7, and neither Lang nor Modaro knew prior to their decision to withdraw Brown's offer that Brown was pregnant. Lang Aff. ¶ 6; Modaro Aff. ¶ 6.

After Brown's offer was withdrawn, Sara Lee interviewed others for the Solution Sales Representative position, ultimately extending an offer to a woman named Sally Hilger on or about March 22, 2007.[5] Pl. Exs. C, E. Hilger had less

---

[4]Brown does not base her belief of Gluck's and Schreiber's involvement in the decision on personal knowledge and cannot dispute Sara Lee's assertion that Lang and Modaro decided to withdraw Brown's contingent offer without input from Gluck or Schreiber. Gluck signed Brown's offer letter and formal offer rescission letter, Brown interviewed with Gluck and Schreiber, and Brown discussed the details of her prospective employment with Schreiber. Pl. Br. 6-7; citing Def. Ex. C; Def. Ex. K; Brown Dep. 33, 38, 52, 54. Although Brown may well have believed, based on these interactions, that Gluck or Schreiber participated in the decision to rescind her offer, a jury could not rely on Brown's subjective belief to assign Gluck or Schreiber a role in Sara Lee's decision-making process. Brown's unsupported belief that either Gluck or Schreiber was a decision-maker is not sufficient to raise a genuine issue of material fact. See *Witte*, 434 F.3d at 1036-37.

[5]Although Brown states that Hilger was not pregnant at the time of her hire, Brown's assertion is based only "upon information and belief." Pl. Br. 12. "Upon
(continued...)

-7-

than five years of sales experience and did not have sales experience in the food industry.  Pl. Ex. C; Pl. Ex. E at 3.

### *Discussion*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate in hiring decisions because of an individual's sex.  42 U.S.C. § 2000e-2(a)(1).  In 1978 the Pregnancy Discrimination Act ("PDA"), Pub. L. No. 95-555, 92 Stat. 2076 (1978), amended Title VII to specify that the terms "because of sex" or "on the basis of sex" include but are not limited to pregnancy, childbirth, or related conditions.  See 42 U.S.C. § 2000e(k).  Women who are pregnant must be treated the same as unaffected individuals (female or male) for purposes of employment.  Brown claims that she was treated worse than other applicants seeking employment with Sara Lee because she was pregnant at the time of her application.  The court analyzes her pregnancy discrimination claim as it would any other gender discrimination claim.  See *Hall v. Nalco Co.*, 534 F.3d 644, 647 (7th Cir. 2008) (explaining that the PDA did not create new rights or remedies under Title VII and did not change the basic approach to a Title VII claim).

---

[5](...continued)
information and belief" is a pleading concept, and it falls short of the personal knowledge needed for admissible evidence at the summary judgment stage.  For purposes of Sara Lee's summary judgment motion, whether or not Hilger was pregnant at the time of her hire is simply unknown.

As with any other gender discrimination claim, Brown may prove her pregnancy discrimination claim through either the direct method or the indirect method, or a combination of the two. *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007); *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Brown proceeds under both the direct and the indirect methods.

To withstand Sara Lee's motion for summary judgment, Brown must support her claim with evidence in the record that is specific and based on personal knowledge. See *Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005); *Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004); *Payne v. Pauley*, 337 F.3d 767, 772-73 (7th Cir. 2003). Where Brown has presented nothing other than her own self-serving statements having no apparent basis in personal knowledge, those statements are not sufficient to raise genuine issues of material fact. *Witte*, 434 F.3d at 1036-37.

    A.    *Proof with a Direct Evidence "Mosaic"*

A plaintiff may prove discrimination using the direct method by establishing either an acknowledgment of discriminatory intent or circumstantial evidence that provides the basis for an inference of intentional discrimination. *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006). Because it is rare for the decision maker to admit outright that his or her actions were based on the prohibited

animus, the law allows plaintiffs to prove their cases by assembling a "convincing mosaic" of circumstantial evidence indicating that a defendant acted with a discriminatory motive. See *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000); *Troupe*, 20 F.3d at 737.

The Seventh Circuit has recognized three types of circumstantial evidence that can create this mosaic of proof either individually or in combination. See generally *Troupe*, 20 F.3d at 736. Most commonly, plaintiffs will bring direct evidence by way of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.*, citing *Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 426 (7th Cir. 1992); *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1314-15 (7th Cir. 1989). Second, plaintiffs can survive summary judgment using direct evidence by demonstrating that similarly situated employees who were not in the plaintiff's protected class received systematically better treatment in the workplace. This showing need not be rigorously statistical. See *Troupe*, 20 F.3d at 736. Third, a plaintiff might show that he or she was qualified for the job but was passed over for or replaced by a similarly situated person not in the protected class, and that the employer's stated reason for the difference in treatment is pretextual. *Id.* at 736. Regardless of the category of evidence brought forward by a plaintiff and whether the evidence is circumstantial, to withstand a motion for summary judgment the evidence brought forward must point directly to a discriminatory

reason for the employer's action. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003); see also *Troupe*, 20 F.3d at 737 (circumstantial evidence must allow a rational trier of fact to infer that defendant fired plaintiff because he or she was a member of a protected class). Here, Brown relies on evidence that she believes falls into the first and third categories of circumstantial evidence.

### 1. *Timing, Ambiguous Statements, and "Bits and Pieces"*

Under the first category, Brown generally recounts her version of the events leading to Sara Lee's formal rescission of its offer. She states that she was pregnant at the time of her application, and throughout that process Sara Lee "gave Brown every reason to think that she was going to get the job with [Sara Lee] up until she told Schreiber that she was pregnant." Pl. Br. 16-17. She also states that Sara Lee "was fully aware that Brown was pregnant as she told this to both Gluck and Schreiber during her application process," and that Sara Lee had the results of her background check as of December 22, 2006. *Id.* at 17. She asserts that when she informed Schreiber that she was pregnant, he "hesitated," *id.*, citing Brown Dep. 60, and then "nine days after Brown told Schreiber that she was pregnant and would be needing to take maternity leave and almost a month after Verifications, Inc., had made Brown's background check results available to Defendant, Defendant's Human Resources department informed Brown that Defendant had made a preliminary decision not to hire her." Pl. Br. 17-18. She also asserts that she "cured the discrepancy" in her background check by "having

-11-

PepsiCo remedy the incorrect statement about her violating an ethics/code of conduct rule" and "her old supervisors, Leonard and Mitten, explained to Gluck the circumstances surrounding her termination," and that Schreiber told her to "rest easy." *Id.* at 18. Brown also attests to her high level of performance at PepsiCo. *Id.* at 19.

Several of these items are not supported with admissible evidence. Brown's belief that Sara Lee had her background check as of December 22 is contrary to Gluck's affidavit testimony that she did not provide that information to Sara Lee until some time in January. Gluck Aff. ¶ 5. Because Brown's contrary belief is not based on personal knowledge, it is inadmissible. Although Brown believes that Gluck and Schreiber participated in Sara Lee's decision to withdraw its offer, she has no personal knowledge on that point and has no contrary evidence. She cannot properly dispute the evidence that Modaro and Lang were the decision makers and that they were unaware of Brown's pregnancy when they made their decision. To survive summary judgment, the "bits and pieces" Brown presents in support of her mosaic of circumstantial evidence must "point directly to a discriminatory reason for the employer's action," but here, Brown has no such evidence. Brown has nothing from which a reasonable jury might infer a link between the decision makers (Modaro and Lang) and a discriminatory animus. Without such evidence, her attempt to withstand summary judgment through a showing of suspicious timing, ambiguous statements, and other "bits and pieces" fails.

At best, Brown's argument is based on the timing of these events. See Pl. Br. 20. Setting aside, for a moment, that Schreiber did not decide to withdraw Brown's offer and there is no evidence to support any inference that he told those who did about Brown's pregnancy, suspicious timing alone is insufficient to raise a triable issue of material fact. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004) ("it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact"); *Marshall v. American Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir. 1998) ("in PDA cases, under a circumstantial evidence approach, timing alone does not create an inference of discrimination"). Here, without significantly more, the timing between Brown's revelation to Schreiber that she was pregnant and Modaro and Lang's decision to withdraw Brown's offer cannot support an inference of discrimination.

2.   *Similarly Situated Applicants and Pretext*

Brown asserts that she was qualified for the job at Sara Lee and that Sara Lee's reason for withdrawing its offer was pretextual. Pl. Br. 19-22. To support her belief that she was qualified for the job, Brown focuses on her resume-based qualifications (her prior work experience and performance). *Id.* at 19. But, as Brown concedes, satisfactorily passing the background check was also a qualification for the job at Sara Lee.[6] Whether or not PepsiCo ever found that

---

[6]Brown does not dispute that "background check discrepancies or the alleged falsification of documents are legitimate non-discriminatory reasons for rejecting a job applicant." Pl. Br. 21.

-13-

Brown had actually violated its ethics policy is irrelevant. Brown was terminated from PepsiCo and was not eligible for rehire, a status that, in Sara Lee's opinion, disqualified her for employment. Sara Lee's honest opinion is all that matters here. See *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006), quoting *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999) ("It is . . . axiomatic that a plaintiff's conclusory statements do not create an issue of fact . . . . An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability") (internal quotation omitted); see also *Farrell v. Butler University*, 421 F.3d 609, 615 (7th Cir. 2005); *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004). Brown has failed to show that she was qualified for the job she sought.

Brown also cannot show that she was passed over for someone not in her protected class. She has no admissible evidence sufficient to support her assertion that the woman whom Sara Lee hired for the Solution Sales Representative position, Sally Hilger, was not pregnant when she was hired.

Even if Brown were able to demonstrate that she was qualified for employment with Sara Lee and that she was passed over for someone not pregnant, she still would not be able to demonstrate pretext. To avoid summary judgment, Brown must also come forward with evidence that would allow a reasonable jury to find that the facially legitimate reason provided by Sara Lee for its decision was a lie, which could support an inference that Sara Lee actually was

motivated by a prohibited animus such as Brown's pregnancy. See *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007); *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006). This examination addresses not whether the employer was correct in its judgment but whether the employer honestly believed the stated justification. See *Ptasznik v. St. Joseph Hospital*, 464 F.3d 691, 696 (7th Cir. 2006). Sara Lee questioned Brown's eligibility for employment based on her background check, which revealed that she was not eligible for rehire at PepsiCo. When Brown's status was not resolved, Sara Lee formally withdrew its offer. Nothing in the record suggests that Sara Lee's decision makers concocted their justification for withdrawing Brown's offer after the fact to cover up illegal discrimination. A rational trier of fact could not conclude from the evidence before the court that Sara Lee was lying and that it decided not to hire Brown because she was pregnant. Brown's direct evidence case fails.

B.   *Indirect Method of Proof*

Under the indirect method, Brown must come forward with evidence (1) that she was pregnant and Sara Lee knew she was pregnant; (2) she applied and was qualified for the position sought; (3) she was rejected; and (4) Sara Lee filled the position with someone who was not pregnant, or left the position open. See *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007) (first prong of a *prima facie* case of pregnancy discrimination is that plaintiff was pregnant and the employer knew of the pregnancy); *Rudin v. Lincoln Land Community College*,

420 F.3d 712, 724 (7th Cir. 2005) (*prima facie* indirect case of failure-to-hire sex discrimination); *Venturelli v. ARC Community Services, Inc.*, 350 F.3d 592, 602 (7th Cir. 2003) (elements of a *prima facie* failure-to-hire pregnancy discrimination case). If Brown were to establish a *prima facie* case, Sara Lee would then have to come forward with a legitimate reason for its decision. *Venturelli*, 350 F.3d at 602. Then, if Sara Lee were to meet its burden of production, Brown could withstand summary judgment only if she presented competent evidence that would suggest an inference that Sara Lee's proffered non-discriminatory explanation was pretextual. *Id.* Because Brown cannot satisfy her *prima facie* case, the court need not address pretext further than it has above.

### 1. *Knowledge of Brown's Pregnancy*

To meet her burden under the first prong, Brown must demonstrate that she was pregnant and that Sara Lee's decision makers knew she was pregnant. See *Griffin*, 489 F.3d at 844. This she cannot show. Brown has demonstrated that she volunteered this information to Gluck and Schreiber, but she has not brought forward competent evidence to refute Sara Lee's evidence showing that neither Gluck nor Schreiber informed Modaro or Lang that Brown was pregnant. Brown also has not brought forward competent evidence to refute Sara Lee's evidence that Modaro and Lang – and not Gluck or Schreiber – made that decision. If neither Modaro nor Lang knew that Brown was pregnant, they could not have decided to

withdraw her contingent offer of employment on that basis.  Brown's *prima facie* case fails.

Brown attempts to avoid this failure by relying on what is known as the "cat's paw" theory, under which "the employer may not be 'conversant with the possible [discriminatory] animus that may have motivated [the non-decisionmaker's] recommendation,' but may nonetheless be liable for that animus if it acts as a conduit for the non-decisionmaker's bias."  *Byrd v. Illinois Dep't of Public Health*, 423 F.3d 696, 709 (7th Cir. 2005) (where ample evidence suggested that non-decisionmaker was biased and participated in plaintiff's evaluation process, employer could be held liable for biased input unless employer could demonstrate it would have taken same action against plaintiff absent the tainted input).  However, Brown has brought forward no evidence to suggest that Gluck or Schreiber harbored an illegal motive, or that they had any input in Lang's and Modaro's decision to withdraw Brown's offer.  Without some showing of bias and input on the part of Gluck or Schreiber, the cat's paw theory does not overcome Sara Lee's evidence that Lang and Modaro made their decision to withdraw Brown's offer without knowing of Brown's pregnancy, let alone discriminatory motive.

        2.     *Brown's Qualifications*

Sara Lee contends that because Brown did not clear the background check, she was not a qualified applicant for the Solution Sales Representative position. Def. Br. 23. Brown does not dispute that background check discrepancies are legitimate reasons for rejecting job applicants, but she counters Sara Lee's position with a recitation of positive performance reviews she received from PepsiCo. Pl. Br. 21, 23. As discussed above, however, the only issue here is whether Brown was qualified in Sara Lee's eyes. Brown's own views and PepsiCo's opinions do not matter. *Sublett*, 463 F.3d at 740; *Farrell*, 421 F.3d at 615; *Herron*, 388 F.3d at 300. Given her concession that Sara Lee's reliance on a discrepancy in her background check was a legitimate basis for rejecting her application, Brown's *prima facie* case fails on this prong, as well.

### 3.     *Sara Lee's Search for Applicants*

Finally, to satisfy the fourth prong of her *prima facie* case, Brown must come forward with evidence showing either that Sara Lee filled the position with a person not in Brown's protected class or that the position remained open. See *Rudin*, 420 F.3d at 724; *Venturelli*, 350 F.3d at 602. The evidence shows that Sara Lee filled the position, extending an offer to Sally Hilger on or about March 22, 2007. Brown has not offered admissible evidence to show that Hilger was not pregnant at the time of her hire. Her *prima facie* case fails on this prong, as well.

### *Conclusion*

Brown has failed to meet her burden under either the direct or indirect methods of proving her claim of pregnancy discrimination. Sara Lee's motion for summary judgment is granted accordingly, and final judgment will be entered.

So ordered.

Date:  April 14, 2009

*David F. Hamilton*

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Kenneth E. Lauter
HASKIN LAUTER & LARUE
klauter@hlllaw.com

Jay Meisenhelder
HASKIN LAUTER & LARUE
jmeisenhelder@hlllaw.com

Alejandro Valle
GONZALEZ SAGGIO & HARLAN LLP
alejandro_valle@gshllp.com, simsl@gshllp.com